❑ Original

CLERK'S OFFICE
A TRUE COPY
Sep 04, 2020
s/ JeremyHeacox
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of ) | |
| *(Briefly describe the property to be searched* ) | |
| *or identify the person by name and address)* ) | Case No. |
| Information associated with the following ) | |
| Google drive accounts/email address: ) | **20-M-377 (SCD)** |
| sunsetcr2018@gmail.com ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____
*(identify the person or describe the property to be searched and give its location)*:

See attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See attachment B

**YOU ARE COMMANDED** to execute this warrant on or before     September 18, 2020     *(not to exceed 14 days)*
❑ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to     Honorable Stephen C. Dries     .
*(United States Magistrate Judge)*

❑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❑ for _____ days *(not to exceed 30)*   ❑ until, the facts justifying, the later specific date of _____ .

Date and time issued:     09/04/2020 10:33 am                          *Judge's signature*

City and state:     Milwaukee, WI.                          Honorable Stephen C. Dries
                                                                         *Printed name and title*

## <u>ATTACHMENT A</u>

**Property to Be Searched**

These warrants apply to information associated with the following Google drive accounts and email addresses that are stored at premises controlled by Google, a company that accepts service of legal process at 1600 Amphitheatre Parkway in Mountain View, California.

**Target Account 1: sunsetpharmacysupply@gmail.com**

**Target Account 2: sunsetcr2018@gmail.com**

## ATTACHMENT B

## Particular Things to be Seized

**I.      Information to be disclosed by Google (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, regardless of whether such information is stored, held or maintained inside or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A, for the time period of January 1, 2019 to the present:

a.      The contents of all e-mails associated with the accounts, including stored or preserved copies of e-mails sent to and from the accounts, draft e-mails, the source and destination addresses associated with each e-mail, the date and time at which each e-mail was sent, and the size and length of each e-mail;

b.      All records or other information regarding the identification of the accounts, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the accounts were created, the length of service, the IP address used to register the accounts, log-in IP addresses associated with session times and dates, account status, alternative e-mail addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c.      The types of service utilized;

d.      All records or other information stored at any time by an individual using the accounts, including address books, contact and buddy lists, calendar data, pictures, and files;

3

e.      All records pertaining to communications between the Provider and any person regarding the accounts, including contacts with support services and records of actions taken;

f.      All communications, in whatever form, and other information from Google Hangouts associated with the accounts;

g.      All information and documents from Google Drive associated with the accounts;

h.      All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Google; and

i.      For all information required to be disclosed pursuant to this warrant, the physical location or locations where the information is stored.

The Provider is hereby ordered to disclose the above information to the government within fourteen days of the issuance of this warrant.

4

**II.     Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 21, United States Code, Sections 829(e), 841(a)(1), 841(h), 846, and 843(c)(2)(A) and occurring after January 1, 2012, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

a.      The importation and distribution of controlled substances and other prescription medications.

b.      Information relating to the identity of any and all individuals who operate or maintain online pharmacies that sell controlled substances and other prescription medications.

c.      Records of payment made in relation to the operation and maintenance of online pharmacies that sell controlled substances and other prescription medications, including proceeds from such sales.

d.      Information relating to who created, used, or communicated with the account or identifier, including records about their identities and whereabouts.

**Return**

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|
| | | |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**CLERK'S OFFICE**
**A TRUE COPY**
Sep 04, 2020
s/ JeremyHeacox
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
Information associated with the following Google drive )
accounts/email address: )
sunsetcr2018@gmail.com )

Case No. 20-M-377 (SCD)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See attachment A

located in the _____Eastern_____ District of _____Wisconsin_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

❑ contraband, fruits of crime, or other items illegally possessed;

❑ property designed for use, intended for use, or used in committing a crime;

❑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21, USC, Sections 829(e), 841(a)(1), and 846 and | Distribution of Controlled Substances |
| Title 21, United States Code, Sections | Distribution of Controlled Substances by means of the Internet |

The application is based on these facts:

See attached affidavit

❑ Continued on the attached sheet.

❑ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

DEA SA Kellen Williams
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____telephone_____ *(specify reliable electronic means)*.

Date: __9-4-20__

_____
*Judge's signature*

City and state: __Milwaukee, WI.__

Honorable Stephen C. Dries
_____
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF**
**APPLICATION FOR SEARCH WARRANTS**

I, Kellen J. Williams, being first duly sworn, hereby depose and state as follows:

## I.       INTRODUCTION AND AGENT BACKGROUND

1.       I make this affidavit in support of an application for search warrants for information associated with two Google accounts that are stored at premises controlled by Google, Inc. ("Google") an e-mail provider headquartered at 1600 Amphitheatre Parkway, Mountain View, California.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for search warrants under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.       I am a Special Agent with the Drug Enforcement Administration (DEA), having been so employed since September 2012.  As such, I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), in that I am empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Sections 2516(1)(e),  1956, and 1957, and Title 21, United States Code, Sections 841(a)(1), 843(b), 846, 856, 952, and 963.  I have received specialized training on drug identification, surveillance operations, firearms handling, report writing techniques, confidential source handling, Title III wire interceptions and execution, search warrant execution, arrest procedures, and court proceedings.

3.      Based on my training, experience, and participation in drug trafficking and computer related investigations, I know and have observed the following:

a.      I have learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin as well as in other areas of the United States and internationally;

b.      I am familiar with the coded language utilized over the telephone and other electronic communications to discuss drug trafficking and know that the language is often limited, guarded and coded. I also know the various code names used to describe controlled substances;

c.      I know drug dealers often put telephones in the names of others (nominees) in order to distance themselves from telephones that they use to facilitate drug distribution. Because drug traffickers go through many telephone numbers, they often do not pay final bills when they are done using a telephone number and then are unable to put another line in the name of that subscriber;

d.      I know drug traffickers often purchase and/or title assets in fictitious names, aliases or the names of relatives, associates or business entities to avoid detection of these assets by government agencies. I know that even though these assets are in the names other than the drug traffickers, the drug traffickers actually own and continue to use these assets and exercise dominion and control over them;

e.      I know drug traffickers must maintain on-hand large amounts of currency to include currency stored in financial accounts readily accessible in order to maintain and finance their ongoing drug business;

f.      I know it is common for drug traffickers to maintain books, records, receipts, notes ledgers, airline tickets, receipts relating to the purchase of financial instruments and/or the transfer of funds and other papers relating to the transportation, ordering, sale and distribution of controlled substances. The aforementioned book, records, receipts, notes, ledger, etc., are maintained where the traffickers have ready access to them. These may be in paper form as well as in digital form on computers, Smartphones, cellphones, and other electronic media or electronic storage devices;

g.      I know it is common for large-scale drug traffickers to secrete contraband, proceeds of drug sales and records of drug transactions in secure locations within their residences, their businesses and/or other locations over which they maintain dominion and control, for ready access and to conceal these items from law enforcement authorities;

h.      I know it is common for persons involved in drug trafficking to maintain evidence pertaining to their obtaining, secreting, transfer, concealment and/or expenditure of drug proceeds, such as currency, financial instruments, precious metals and

2

gemstones, jewelry, books, records of real estate transactions, bank statements and records, passbooks, money drafts, letters of credit, money orders, bank drafts, cashier's checks, bank checks, safe deposit box keys and money wrappers. These items are maintained by the traffickers within residences, businesses or other locations over which they maintain dominion and control, as well as in digital form on computers, Smartphones, cellphones, and other electronic media or electronic storage devices;

i.      I know large-scale drug traffickers often use electronic equipment such as telephones (land-lines and cell phones), pagers, computers, telex machines, facsimile machines, currency counting machines and telephone answering machines to generate, transfer, count, record and/or store the information described in the items above, as well as conduct drug trafficking activities;

j.      I know when drug traffickers amass large proceeds from the sale of drugs, the drug traffickers attempt to legitimize these profits through money laundering activities. To accomplish these goals, drug traffickers utilize the following methods, including, but not limited to: domestic and international banks and their attendant services, securities brokers, professionals such as attorneys and accountants, casinos, real estate, shell corporations and business fronts and otherwise legitimate businesses which generate large quantities of currency;

k.      I know drug traffickers commonly maintain addresses or telephone numbers which reflect names, addresses and/or telephone numbers of their associates in the trafficking organization in papers and books  as well as in digital form on computers, Smartphones, cellphones, and other electronic media or electronic storage devices;

l.      I know drug traffickers take or cause to be taken photographs or videos of themselves; their associates, their property and their drugs. These traffickers usually maintain these photographs or videos in their possession, often in digital form on computers, Smartphones, cellphones, and other electronic media or electronic storage devices;

m.      I am familiar with computers, cellular telephones, Smartphones, pagers and their uses by drug traffickers to communicate with suppliers, customers, and fellow traffickers; Drug traffickers use these devices to record their transactions and aspects of their lifestyle related to drug dealing, whether in the form of voicemail, email, text messages, video and audio clips, floppy disks, hard disk drives, thumbnail drives, CD's, DVD's, optical disks, Zip disks, flash memory cards, Smart media and any data contained within such computers or cellular telephones, electronic storage media and other settings particular to such devices; I know that such devices automatically record aspects of such communications, such as lists of calls and communications, and any particularized identification assigned to those source numbers or email addresses by the owner of the devices; and

3

n.      I know the following information can be retrieved to show evidence of use of a computer or Smartphone to further the drug trade: system components, input devices, output devices, data storage devices, data transmission devices, and network devices and any data contained within such systems; computer media and any data contained within such media; operating system software, application or access program disks, manuals, books, brochures, or notes, computer access codes, user names, log files, configuration files, passwords, screen names, email addresses, IP addresses, and SIM cards.

4.      This affidavit is based upon my personal knowledge and upon information reported to me by other federal and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable.  Throughout this affidavit, reference will be made to case agents.  Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.

5.      Because this affidavit is submitted for the limited purpose of securing authorization for the requested search warrants, I have not included each fact known to me concerning this investigation. I have set forth only the facts that I believe are essential to establish probable cause for the requested warrants. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of violations of Title 21, United States Code, Sections 829(e), 841(a)(1), and 846 (Distribution of Controlled Substances), and Title 21, United States Code, Sections 841(h) and 843(c)(2)(A) (Distribution of Controlled Substances by means of the Internet) have been committed by the users of **sunsetpharmacysupply@gmail.com** (**TARGET ACCOUNT 1**) and **sunsetcr2018@gmail.com (TARGET ACCOUNT 2)**.  There is also probable cause to search the locations described in Attachment A for fruits, evidence and instrumentalities of these crimes, as further described in Attachment B.

4

## II.    STATUTORY BACKGROUND

6.    The Ryan Haight Online Pharmacy Consumer Protection Act of 2008 amended the Controlled Substances Act to address online pharmacies, codified at 21 U.S.C. § 829. No controlled substance that is a prescription drug as determined by the Federal Food, Drug and Cosmetic Act may be delivered, distributed, or dispensed by means of the Internet without a valid prescription, as required by C.F.R. § 1306.09(a). *See* 21 U.S.C. §§ 829(e) and 841(a)(1) (Distribution of Controlled Substances); 21 U.S.C. §§ 841(h) and 843(c)(2)(A) (Offenses involving distribution of Controlled Substances by means of the Internet).

> According to Title 21 U.S.C. § 829, the term "valid prescription" means a prescription that is issued for a legitimate medical purpose in the usual course of professional practice by a practitioner who has conducted at least 1 in-person medical evaluation of the patient or a covering practitioner. The term "in-person medical evaluation" means a medical evaluation that is conducted with the patient in the physical presence of the practitioner, without regard to whether portions of the evaluation are conducted by other health professionals. The term "covering practitioner" means, with respect to the patient, a practitioner who conducts a medical evaluation (other than an in-person medical evaluation) at the request of a practitioner who has conducted at least 1 in-person medical evaluation of the patient or an evaluation of the patient through the practice of telemedicine within the previous 24 months and is temporarily unavailable to conduct the evaluation of the patient.

7.    The Ryan Haight Online Pharmacy Consumer Protection Act of 2008 also added new provisions to prevent the illegal distribution of controlled substances by means of the Internet, including registration requirements of online pharmacies, Internet pharmacy website disclosure information requirements, and prescription reporting requirements for online pharmacies. According to C.F.R. § 1301.11(b):

> As provided in sections 303(f) and 401(h) of the Act (21 U.S.C. 823(f) and 841(h)), it is unlawful for any person who falls within the definition of "online pharmacy" (as set forth in section 102(52) of the Act (21 U.S.C. 802(52)) and § 1300.04(h) of this chapter) to deliver, distribute, or dispense a controlled substance by means of the Internet if such person is not validly

5

registered with a modification of such registration authorizing such activity (unless such person is exempt from such modified registration requirement under the Act or this chapter).

8.    According to DEA records, 247 Support Online is not a registered online pharmacy.

### III.    PROBABLE CAUSE

#### <u>Background: Death of Stephen Holder</u>

9.    On February 17, 2018, the Oconomowoc Police Department was dispatched to 1346 Bluebird Drive, Oconomowoc, for a subject with a possible self-inflicted gunshot wound. Upon arrival, officers found Stephen Holder ("Holder") deceased in a bedroom of the residence with a self-inflicted gunshot wound. During the death investigation, detectives discovered Holder had an addiction to several medications, to include Tramadol, Ambien, Klonopin, and others. Detectives spoke with Holder's girlfriend and ex-wife, and also reviewed Holder's cellular telephone messages, e-mail and internet browsing history. Detectives found that Holder was being contacted by several different online pharmaceutical distributors. The distributors were reaching out to Holder on a regular basis via e-mail, telephone calls, and even text messages. Some of the text messages advised Holder that if he didn't like or couldn't afford some medications, he should just try others.

10.    In March of 2018, detectives with Oconomowoc Police Department contacted the Milwaukee District Office of the DEA, to discuss their aforementioned investigation. Based on this information, the Milwaukee District Office initiated an investigation into the internet pharmacy 247 Support Online, and its affiliates, located at www.247supportonline.com, which advertises for sale controlled and non-controlled pharmaceuticals, including schedule II and schedule IV controlled substances, without requiring a prescription for such substances.

6

11. On March 16, 2018, case agents met with the ex-wife of Holder at the Oconomowoc Police Department, who is controlling the estate of Holder. The ex-wife provided written consent to search the cellular telephone and two e-mail accounts belonging to Holder. Furthermore, the ex-wife provided consent for agents to assume the identity of Holder in using Holder's e-mail account to send undercover ("UC") e-mails to online pharmacies previously used by Holder.

**Investigation of www.247supportonline.com**

12. On March 19, 2018, while reviewing Holder's e-mail account, at approximately 5:11 p.m., case agents observed an incoming e-mail from Nicole Adams ("Adams") using e-mail address orders@247supportonline.com. The e-mail subject was "15 OFF!!!!!" and the message stated, "Hi Stephen, We are 24/7 support online, the world's leading provider for online pharmacies. Please let us know if you need a refill, we have US Tramadol 50MG, 100MG, 200MG, and 225MG, also Soma 350MG/500MG available. Our shipping options are Express $35 (1-2 business days) or Regular shipping for $15 (3-5 business days). You can contact us thru this email address, phone number 888-652-0037 or live chat. *This week we have the 100mg tramadol and 500mg Soma with 15% discount* We are also offering 10% disc on every Holiday, 25% off on your Birthday and different promotions EVERY WEEK!!!!! We will be more than happy to assist you!"

13. On March 20, 2018, at approximately 9:19a.m., case agents, acting in an undercover capacity (UC), responded to the e-mail from Adams using Holder's account, stating "What's the price on 100mg tramadol with the discount? Regards, Stephen." At approximately 9:30 a.m., Adams using orders@247supportonline.com replied, "Dear Sthephen (sic), Here are the prices with the discount, please let me know how many you would like to order and if you want Priority or express shipping. 100MG 30 $106.25; 60 $140.25; 90 $165.75; 120 $191.25; 180

7

$250.75." At approximately 9:42 a.m., the UC replied, "Nicole: I'd be interested in the 180, with express shipping please." At approximately 9:51 a.m., Adams using orders@247supportonline.com replied, "Great, the total with the express shipping will be $286 and it will be deliver (sic) in 1-2 business days, please confirm your shipping address and if you want to pay with Credit card or bank transfer." At approximately 10:29 a.m., the UC replied, "I will pay with credit card." At approximately 10:38 a.m., ADAMS using orders@247supportonline.com replied, "Can you please provide me with the billing and credit card information." At approximately 11:56 a.m., the UC replied, "Can I pay with credit card? My shipping address is the same: 1346 Bluebird Dr, Oconomowoc, WI 53066. Regard, Stephen." At approximately 12:03 p.m., Adams using orders@247supportonline.com replied, "Yes, we take, visa, mastercard and Amex." At approximately 12:41 p.m., the UC replied, "I'd rather not send my CC over email, is there a secure site to finalize the purchase?" At approximately 12:47 p.m., Adams using orders@247supportonline.com replied, "If you want I can give you a call or I can also provide you with our bank information and you can make a transfer to Wellsfargo (sic) of bank of America." At approximately 12:59 p.m., the UC replied, "No problem, I can email it. I'm going to get a prepaid card and I'll send you the information to complete the transaction. Thanks again." At approximately 1:00 p.m., Adams using orders@247supportonline.com replied, "Perfect, we will wait for your information."

14. On March 21, 2018, at approximately 11:45a.m., the UC replied, "Hi Nicole: Would it be easier if I deposited the money into your account at a bank of America or well Fargo? Otherwise I'll get the credit card instead and finalize today. Regards, Stephen." At approximately 11:54 a.m., Adams using orders@247supportonline.com replied, "Hi Stephen, I can give you the information, whatever is easier for you, but if you want to use the Credit card we will process the

8

cards in 1hr so if you want us to ship the packages today you have 1hr to provide us with CC info or 3hrs to make the transfer." At approximately 11:57 a.m., the UC replied, "Ok I can just stop by the wells Fargo near my work and deposit it in your account. Then I can email the receipt to you." At approximately 11:59 a.m., Adams using orders@247supportonline.com replied, "Perfect, this will be in the information you need: Adriana Chavarria V, Account number: 6926973311, Routing number: 121042882, nachavi@hotmail.com." At approximately 12:04 p.m., the UC replied, "Ok perfect, so I'll just head to the wells Fargo and do the deposit slip for your account and email the receipt. That works?" At approximately 12:15 p.m., Adams using orders@247supportonline.com replied, "Great!!"

15. At approximately 1:49 p.m., the UC deposited $286 into Wells Fargo account 6926973311 and obtained a deposit slip. At approximately 1:52 p.m., the UC e-mailed Adams at orders@247supportonline.com stating, "I attached the deposit slip, please send tracking number. Regards, Stephen." At approximately 1:55 p.m., Adams using orders@247supportonline.com replied, "Thank you so much, we will email you the tracking number in the next 2 hrs." At approximately 4:21 p.m., case agents received an e-mail from "Dany White" at the same e-mail address (orders@247supportonline.com) used by Adams. The e-mail subject is "Tracking number" and stated, "Dear Stephen, Your order has been shipped and this is your tracking number: EE158651895US. Please remember the USPS delivery time: *Express Mail Service 1-2 business day, *Priority Mail takes 3-5 Business Days, *Orders from India 7-15 business days. You will be able to track your package at https://tools.usps.com/go/TrackConfirmAction!input.action Please remember that we use the shipping service with USPS, any delay in delivery isn't our responsibility or fault, what we can do is find a reasonable solution to your delivery situation. Dear customer, If you are not satisfied with our Customer Service, delivery time frame, product quality, etc. no

9

matter the reason please contact us BEFORE requesting a refund. Once a refund has been requested customers are not eligible to reorder using credit cards again. We care about our customers and we believe there is always a solution for a problem! NEW IMPORTANT INFORMATION: Please keep in mind that you can not mention in any kind of payment or software that this is for pharmaceutical products if you need to contact us please call 888-652-0037 or use this email ONLY, please add our email address into your contact list just to make sure you receive our emails. Please take this recommendation so that we can continue to provide you with our service that you need for your health. Have a lovely day :)."  Based on their training and experience, and the investigation to date, case agents believe that the user of orders@247supportonline.com is distributing controlled substances over the internet without a prescription.  Case agents further believe that the user of orders@247supportonline.com wants to avoid detection by law enforcement and therefore directs its customers to refrain from referring to the sale of pharmaceuticals in correspondence.

### **Package Seizures and Search Warrants**

16.     On March 22, 2018, at the request of DEA agents, the United States Postal Inspection Service ("USPIS") Inspectors intercepted the package bearing tracking number EE158651895US purchased by the UC.  Case agents, with consent by Holder's ex-wife, opened the package and discovered 18 foil packs of 10 white pills each labeled Tramadol.  The foil packs were labeled "Manufactured in India by HAB Pharmaceuticals & Research Limited."  The pills field tested positive for Tramadol.  Case agents are aware that Tramadol is a controlled substance. According to records from the Drug Enforcement Administration, case agents are aware that Holder did not have valid prescription for Tramadol.   On March 20, 2018, the user of

orders@247supportonline.com did not request that the UC, purporting to be Holder, provide them with a prescription for Tramadol.

17.     According to records from UPS, the Tramadol package was dropped off at a post office in Rialto, CA on March 21, 2018 and was received at 2:18 p.m. (PST). The return address was PC Online, 2800 Cole Ave, Dallas, TX 75204.  Case agents believe this was a fictitious address used to avoid detection by law enforcement.

18.     In April 2018, an administrative subpoena was issued to T-Mobile, requesting subscriber information and call detail history of (909) 644-3329.  T-Mobile responded that (909) 644-3329 is subscribed to Adriana Chavarria at 6709 Brampton Ave, Rialto, CA 92376.  This account was established on November 9, 2017.  Analysis of the call history of (909) 644-3329, revealed the cellular telephone had several telephone communications with UPS Stores in Southern California in 2017 and 2018.

19.     A query of USPIS records indicate that in December 2018, 1,580 USPS envelopes were sent to 6709 Brampton Ave, Rialto, CA.  A USPS.com account for "Adriana Villalobos" listed 6709 Brampton Ave as the account address with nachavi@hotmail.com as the associated email address.

20.     On April 2, 2018, case agents, acting in an undercover capacity, conducted a second controlled purchase from orders@247supportonline.com, this time purchasing 180 Tramadol 100mg pills and 180 Carisoprodol 500mg pills.  Again, case agents deposited money directly into Chavarria's Wells Fargo account and received the controlled substances via U.S. Mail without a prescription a few days later.

21.     On April 17, 2018, case agents conducted a third controlled purchase from orders@247supportonline.com, this time purchasing 180 Tramadol 100mg pills.  Again, case

agents deposited money directly into Chavarria's Wells Fargo account and received the controlled substances via U.S. Mail without a prescription a few days later.

22.     In May 2018, case agents received video surveillance of the April 17, 2018 undercover Tramadol purchase from USPIS.  Analysis of the video revealed the UC package was delivered by a Hispanic male with a black beard and wearing a hat (later identified as Jose SANCHEZ VARGAS).  Case agents reviewed postal surveillance of four other undercover purchase package deliveries at USPS, and found SANCHEZ VARGAS, with a black beard and short cropped hair, delivered all five undercover purchase packages as discussed herein.

23.     On May 23, 2018, case agents conducted a fourth controlled purchase from orders@247supportonline.com, this time purchasing 90 Tramadol 100mg pills.  This time, case agents used a prepaid credit card to purchase the controlled substances from a PayPal account and received the controlled substances via U.S. Mail without a prescription a few days later.

24.     On May 30, 2018, DEA and USPIS seized two packages coming from Singapore that were being sent to Fast Beauty Online, 6185 Magnolia Ave #156, Riverside, CA 92506. A search warrant was conducted on the packages, resulting in the seizure of 3000 Carisoprodol 500mg tablets. Two more packages were being sent to Caliq Shop, 5198 Arlington Ave #909, Riverside, CA 92504.  A search warrant was conducted on the packages, resulting in the seizure of 3000 Carisoprodol 500mg tablets.

25.     On May 31, 2018, case agents conducted a fifth controlled purchase from orders@247supportonline.com, this time purchasing 90 Tramadol 200mg pills.  This time, case agents used a prepaid credit card to purchase the controlled substances from a PayPal account and received the controlled substances via U.S. Mail without a prescription a few days later.

26.     On June 4, 2018, case agents acting in an undercover capacity received an incoming email from orders@247supportonline.com, with the subject reading, "Important Update!!" The email stated, "Dear Stephen, We would like to inform you that we are relocating our operation and working in our stock for a better service, for the next 4 WEEKS we are going to be able to process orders but only from OVERSEAS, like most of you know we are not able to ship tramadol at the moment because that specific medication have an exportation issue so for that reason we are offering a new product which is TAPENTADOL 100MG for Pain and Soma 350mg and 500mg. We re going to keep you update with the process and here is a little bit of information for the new product. Tapentadol (brand names: Nucynta, Palexia, and Tapal) is a centrally acting opioid analgesic of the benzenoid class with a dual mode of action as an agonist of the u-opioid receptor and as a norephinephrine reuptake inhibitor (NRI). Analgesia occurs with 32 minutes of oral administration, and lasts for 4-6 hours......(more)."

27.     On June 11, 2018, DEA and USPIS seized two packages coming from India that were addressed to Fast Beauty Online, 6185 Magnolia Ave #156, Riverside, CA 92506.  A search warrant was conducted on the packages, resulting in the seizure of 4000 Tapentadol 100mg tablets. Two more packages were being sent to Caliq Shop, 5198 Arlington Ave #909, Riverside, CA 92504.  A search warrant was conducted on the packages, resulting in the seizure of 4000 Tapentadol 100mg tablets.  Based on their training and experience, case agents are aware that Carisoprodol and Tapentadol are controlled substances.

28.     In June 2018, case agents requested USPIS conduct a postal records check on 6185 Magnolia Ave #156, Riverside, CA.  The post office in Riverside, CA, received the Mailbox Service Agreement from the UPS Store for that postal box and provided it to USPIS.  The customer name listed for that box is Jose Alonso SANCHEZ VARGAS, Fast Beauty Online, 1175 W Blaine

13

St, Riverside, CA 92508, telephone number (909) 775-2218 and email address josealonsos-18@gmail.com. SANCHEZ VARGAS provided his Costa Rican passport for proof of identity. The application was dated March 22, 2018.

29. Case agents also requested USPIS conduct a postal records check on 5198 Arlington Ave #909, Riverside, CA. The post office in Riverside, CA, received the Mailbox Service Agreement from the UPS Store for that postal box and provided it to USPIS. The customer name listed for that box is Jose Alonso SANCHEZ VARGAS, Caliq Shop, 1175 W Blaine St, Riverside, CA 92508, telephone number (909) 775-2218 and email address josealonsos18@gmail.com. SANCHEZ VARGAS provided his Costa Rican passport for proof of identity. The application was also dated March 22, 2018.

30. On June 14, 2018, case agents, conducted a sixth controlled purchase from orders@247supportonline.com, this time purchasing 120 Tapentadol 100mg pills. This time, case agents used a prepaid credit card to purchase the controlled substances from a PayPal account and received the controlled substances without a prescription directly from India.

31. On June 25, 2018, agents reviewed the Costa Rican passport photo of SANCHEZ VARGAS and positively identified him as the same person who dropped off the five undercover purchase packages at the post offices in the Riverside, CA area. Case agents are also aware that 1175 W. Blaine St, Riverside, CA, is an address used by Chavarria.

32. An administrative subpoena was issued to Charter Communications for accounts at 1175 W. Blaine St, Riverside, CA. According to records from Charter Communications, "Adrianna Chazarria" has an active internet and cable account at 1175 W. Blaine St, Apt 62, Riverside, CA. According to records from Charter Communications, the primary phone number for this account is as (909) 644-3329 and the email address as nachavi@hotmail.com. The IP

14

address for the account at 1175 W. Blaine St, Riverside, CA, and associated with nachavi@hotmail.com, is listed as 2600:6c51:7a7f:e4c5:0:6acd:f1d6:164d.  A search of a law enforcement databases revealed that this IP address checked on the status of the Carisoprodol and Tapentadol packages seized by law enforcement in May and June 2018.

**Search Warrants for nachavi@hotmail.com and orders@247supportonline.com**

33.    On January 24, 2019, the Honorable United States Magistrate Judge David E. Jones, Eastern District of Wisconsin, issued a search warrant authorizing the search of nachavi@hotmail.com from March 1, 2018, to January 24, 2019.  On February 7, 2019, MSN Hotmail responded with the requested information.

34.    Case agents located an email dated March 8, 2018, sent from nachavi@hotmail.com to librerialeisa@gmail.com, with the email subject "RV: Lease agreement updated with Jose."    In the body, Chavarria forwarded an email from JGupta@fdcmanagement.com which read "Hello Adriana, I have updated the lease with Jose and once I have the roommate removal for Johnas. Please make sure to get this lease agreement notarized. You can either get a single page notarized for this or they can notarized the very last page of the lease."  Attached to the email is a pdf file titled "62 Lease agreement."  The attachment is a lease between lessees Chavarria and SANCHEZ VARGAS and lessor Timbers Apartments, Riverside, CA, where SANCHEZ VARGAS was added to her lease at 1175 Blaine Street #62.

35.    Case agents also located emails discussing pricing for controlled substances and other emails related to controlled substances which were sent between nachavi@hotmail.com and orders@247supportonline.com.    In addition, Chavarria uses nachavi@hotmail.com to communicate with at least three different UPS Stores in California, which case agents believe were used to receive suspected bulk shipments of controlled substances from India and Singapore.

15

36.     On March 7, 2019, the Honorable United States Magistrate Judge William E. Duffin, Eastern District of Wisconsin, signed a search warrant authorizing the search of nachavi@hotmail.com for January 25, 2019, to March 7, 2019.  On March 21, 2019, MSN Hotmail responded with the requested information.

37.     A review of nachavi@hotmail.com's emails from January 2019 to March 2019 revealed that on March 1, 2019, Chavarria sent herself an email from nachavi@hotmail.com to nachavi@hotmail.com containing her Avoxi username, nicole@247supportonline.com, and password; the webmail username orders@247supportonline.com and password; her LiveHelpNow.net chat username nicoleadams and password; and other usernames and passwords related to 247supportonline.com.[1]

38.     On April 12, 2019, the Honorable United States Magistrate Judge David E. Jones, Eastern District of Wisconsin, signed a search warrant authorizing the search of orders@247supportonline.com.  On April 12, 2019, case agents began downloading the emails, ending on April 26, 2019.  In total, case agents downloaded 17,828 emails from the inbox, and 34,546 emails from the sent items, totaling 2.78 GB.

39.     The emails recovered from orders@247supportonline.com showed an extensive history of sending controlled substances all over the United States without any prescription required.  Case agents recovered hundreds of orders, with money being sent to Chavarria's bank accounts, payment processing centers, money orders, and other means.  Conservatively, case agents believe Chavarria and 247SuppportOnline are responsible for the distribution of over

---

[1] Avoxi is a cloud-based communication systems that provides VoIP phone service technology; Avoxi is the service that provides the 1-800 number used by 247 Support Online.  LiveHelpNow is an online based help desk platform used by 247 Support Online to provide a help desk chat service on their website.

16

100,000 units of Schedule II and Schedule IV controlled substances. Case agents also located orders of thousands of pills ordered directly from India and being sent to fictitious businesses with UPS Store address in Southern California.

40. In addition, case agents located 273 emails between orders@247supportonline.com and **sunsetpharmacysupply@gmail.com (TARGET ACCOUNT 1)**. The majority of those 273 emails were either bulk orders placed by orders@247supportonline.com to be shipped to UPS Store accounts in Southern California, or orders placed by clients of 247supportonline. Based on training and experience, and the investigation to date, case agents believe UPS Store mailbox accounts are used to deter law enforcement as these are opened with fictitious business names. For example, on August 8, 2017, orders@247supportonline.com sent an email to **sunsetpharmacysupply@gmail.com (TARGET ACCOUNT 1)**, which stated, "Morning Guys, I need this order please: Name: Mabrouk XXXXX, Address: XXX Cheyenne Trail, City: harker heights, State: TX, Zip: 76548, Product: Tramadol 50mg, 210 tablets." A reply email from **sunsetpharmacysupply@gmail.com (TARGET ACCOUNT 1)** would then be sent with tracking information. For example, on October 12, 2017, **sunsetpharmacysupply@gmail.com (TARGET ACCOUNT 1)** sent an email to orders@247supportonline.com stating, "Dany, Anthea: EM889393016IN Best Regards, Customer Service."

41. On March 9, 2018, orders@247supportonline.com sent an email to **sunsetpharmacysupply@gmail.com (TARGET ACCOUNT 1)** with a bulk order of controlled substances. In that order, orders@247supportonline.com ordered 70,000 Tramadol pills to be sent to seven different UPS Store mailboxes, and 6,000 Carisoprodol pills.

17

42.     Your affiant has reviewed the DEA registration database and 247online is not validly registered with a modification authorizing the distribution of controlled substances by means of the Internet.

**Confidential Source Interview**

43.     On March 2, 2020, case agents debriefed a confidential source ("CS") regarding the drug trafficking activities of 247SupportOnline.com.  Case agents believe the CS's information is credible and reliable for the following reasons:  The CS has given case agents detailed and corroborated information concerning numerous individuals involved in drug trafficking and money laundering, which case agents have independently verified; the CS has provided information against the CS's penal interest in that the CS has admitted his/her involvement in drug trafficking activities in the past; and the CS has had an adequate opportunity to directly observe the events discussed and has heard conversations directly from the individuals discussed herein.

44.     The CS stated he/she is aware that individuals in Costa Rica ran 247SupportOnline.com and would send workers to Southern California to manage the shipping operation.  The CS stated the individuals in Costa Rica would provide business names and direction to the workers in California.  The workers would use the business names to open mailboxes at various UPS Store locations, to receive incoming shipments of controlled substances from overseas.  The CS stated once the shipments arrived, the workers would pick up the controlled substances and take them wherever directed to by the individuals in Costa Rica.  The CS stated the controlled substances were often taken to a storage unit or an apartment for processing.  The boxes would contain large amounts of controlled substances, usually 1000 pill or more.  The workers would then break them down into shipments of 100 pills or so to be shipped to customers in the

18

United States without a prescription. Case agents believe, based on their training and experience and the investigation to date, that SANCHEZ VARGAS is one of aforementioned workers.

**California Surveillance**

45.     On January 10, 2020, the Honorable Judge William E. Callahan, Jr., United States Magistrate Judge in the Eastern District of Wisconsin, signed a warrant authorizing the search of a T-Mobile cellular telephone assigned cellular phone number (909) 507-9464. More specifically, the warrant directed T-Mobile to provide information about the location of (909) 507-9464 for a period of forty-five days.

46.     On several occasions in January and February 2020, SA Wu physically observed Yehudy Chaves-Arias in the same vicinity as the location data for (909) 507-9464. Furthermore, (909) 507-9464 was often located in the vicinity of 12554 McGee Drive, Whittier, CA, the residence of Chaves-Arias. On multiple occasions, location data for (909) 507-9464 revealed that it was in the vicinity of several UPS Stores in Southern California.

47.     On January 21, 2020, HSI agents visited Cube Smart Self Storage, 1238 West Baseline Road, Rialto, CA 92376. A review of location information for (909) 507-9464 revealed it had recently travelled to the storage location. At approximately 5:25 p.m., agents observed the previously mentioned black Kia Optima park in front of storage unit 336. Agents observed Chaves-Arias exit the vehicle and opened the storage unit's metal roll up door. Agents observed shelving units inside the storage unit with numerous brown colored boxes that appeared identical to the ones previously observed at the UPS Stores. These boxes were also identical to parcels observed on video surveillance footage showing Chaves-Arias retrieving them from different UPS Stores.

19

48. On January 29, 2020, HSI agents visited Public Storage, located at 12320 East Whittier Boulevard, Whittier, CA 90602. A review of location information for (909) 507-9464 revealed that it was twice in the vicinity of the storage units of the previous weekend. Specifically, the location data for (909) 507-9464 showed that the telephone had traveled back and forth from Cube Smart Self Storage in Rialto, CA to the Public Storage in Whittier twice on Saturday and twice on Sunday.

49. HSI agents served Public Storage with an administrative subpoena and were provided the rental agreement paperwork and entry and exit log. A review of the Public Storage rental agreement showed that an individual named "Yehudy Chaves-Arias" rented space number A077, which is a 10' by 10' storage unit. Chaves-Arias provided 12554 McGee Drive, Whittier, CA 90606, as his address on the account and telephone number (909) 507-9464 and e-mail address: yehudy@me.com on the rental agreement. Agents believe Chaves-Arias closed his storage unit at Cube Smart and moved the contents of the unit to the Public Storage location.

**June 2020 Surveillance**

50. On June 9, 2020, United States Postal Inspector Tyler Fink reviewed USPS business records when he noticed USPS priority mail parcel 9405511899563430297910, weighing approximately 2 lbs. The shipping label for the parcel indicated it was from "Anytime Mailbox-Postnet OR109, Karen Cordero, 4736 Royal Ave #17225, Eugene OR 97402-1755." The parcel had a typewritten label addressed to "Lalos Electronics, 13502 Whittier Blvd, #431, Whittier, CA 90605-1945." The parcel was destined for a private mailbox within a UPS Store. Agents had noticed several suspicious parcels addressed to this same mailbox from various countries where agents have seized pills related to this investigation.

20

51.     On June 10, 2020, while conducting surveillance on the delivery of the parcel at the UPS Store located at 13502 Whittier Boulevard, Suite H, Whittier, CA 90605, agents noticed the shipping label was placed on top of another shipping label on the parcel from Oregon. The parcel resembled the ones observed at the other UPS Stores that originated from overseas and had observed inside the Cube Smart Storage Unit. Information from the original label showed the parcel originally had a USPS tracking number of LS724582415CH. The USPS records showed LS724582415CH was originally postmarked in Switzerland on April 28, 2020, and was delivered on May 19, 2020, to Karen Cordero at the same mailbox shown as the sender's address on the parcel. A search of USPIS business records by Inspector Fink showed LS724582415CH was tracked in a unique way by one or more subjects. The parcel was tracked by an Internet Protocol (IP) address based in Costa Rica. The same IP was used to track international parcels destined for PO Boxes in South Carolina, Oregon, and New Mexico. While agents were at the UPS Store, personnel advised that there were already two other parcels for mailbox #431 that arrived in May and were awaiting pickup. One box weighed approximately 4.4 lbs. with no return address from Oregon and the other from South Carolina weighed 1.3 lbs. The manager of the UPS Store advised that Yehudy Chaves-Arias had brought a middle aged male (later identified as SANCHEZ VARGAS) into the store to introduce him as the individual that will be picking up parcels for mailbox 431, because Chaves-Arias was going out of the country.

52.     On June 15, 2020, agents received a telephone call from personnel of the UPS Store located at 13502 Whittier Boulevard, Suite H, Whittier, CA 90605. Store personnel advised that a male individual called the store and identified himself as the mailbox holder for unit 431. The store personnel thought the caller sounded like Yehudy Chaves-Arias. The caller asked how many parcels he had there, and was told "three." The caller requested the store personnel place all three

parcels into one box and ship it to "AS Marketing, Attn: Cynthia Mora, 16155 Sierra Lakes Parkway, Suite 160, Box #339, Fontana, CA 92336" and include a return address of "Lalos Electronics, 13502 Whittier Blvd., Suite H-431, Whittier, CA 90605, telephone 888-945-6522." The store personnel asked the caller what was in the boxes; the caller hesitated and ask why she asked. The store personnel told the caller it was a general question that was asked of all shippers. The caller replied computer parts. The caller provided a visa credit card to charge and requested it be shipped next day air, and was adamant the shipment arrive the following morning.

53.     On June 16, 2020, agents were conducting surveillance at the UPS Store located at 16155 Sierra Lakes Parkway, Suite 160, Fontana, CA 92336. Agents served the UPS Store with subpoenas and obtained mailbox agreements for units 618 and 339. The store personnel advised mailbox 618 was rented by Cinthya Mora Sandoval, 6709 Brampton Avenue, Rialto, CA 92376, and telephone number 909-507-9464. The business name and business address listed was "Lalos RX Electronics, 6709 Brampton Avenue, Rialto, CA 92376 and e-mail address: Shippersunset@gmail.com." The mailbox was opened August 23, 2018, and was overdue as of May 23, 2020. The store personnel advised mailbox 339 was rented on June 11, 2020, by Cinthya Mora, 6709 Brampton Avenue, Rialto, CA 92376, and telephone number 909-507-9464. The business name and business address listed was "AS Marketing, 6709 Brampton Avenue, Rialto, CA 92376 and e-mail address: Chepe24RX@gmail.com. Agents were notified that the parcel from the UPS Store in Whittier was not picked up by UPS, so it would not be delivered that day.

54.     Agents served a subpoena at Cambria Villa Apartments, 1531 West Rialto Avenue, Fontana, CA 92335, for apartment number 407. The manager advised the renter was Cinthya Mora. The manager said she hardly ever saw Mora. The one year lease began on September 24, 2019, and will end September 30, 2020. The rent was paid on a monthly basis via a Visa credit

card. The amount of the monthly rent for the two bed one bath apartment was $1,480.00. The apartment has an assigned enclosed garage, which was unit 40. The manager provided a copy of the current occupant's Costa Rican passport for apartment 407, who was SANCHEZ VARGAS, dob: 8/18/1988. SANCHEZ VARGAS told the manager that he would be leaving the United States sometime in August 2020. The manager said she often saw SANCHEZ VARGAS walk in from the front of the building and believed he parked his vehicle outside the building and was certain that he did not park his vehicle in the assigned garage unit 40. Agents conducted a check of law enforcement databases and found Yehudy Chaves-Arias had departed the United States on March 31, 2020 for Costa Rica and SANCHEZ VARGAS arrived in the United States from Costa Rica on March 15, 2020. A review of a court approved telephone location data request for telephone number 909-507-9464 on March 15, 2020, showed the telephone was at Los Angeles International Airport for over an hour, around the same time as SANCHEZ VARGAS' scheduled arrival, after departing 12554 McGee Drive, Whittier, CA 90606, where Yehudy Chaves-Arias was living. Case agents believe, based on their training and experience and the investigation to date, that SANCHEZ VARGAS replaced Chaves-Arias as the current worker sent from Costa Rica to the United States to run the day-to-day operations of the DTO.

55. On June 17, 2020, agents conducted surveillance at the UPS Store located at 16155 Sierra Lakes Parkway, Suite 160, Fontana, CA 92336. At approximately 11:39 a.m., a black color Kia Optima sedan pulled into the parking lot. Agents observed a male resembling SANCHEZ VARGAS exit the driver's door wearing latex gloves and holding a mask in his hand. SANCHEZ VARGAS proceeded to the UPS Store. Agents confirmed the Kia's license plate to be 8MTP024. A few minutes later, SANCHEZ VARGAS departed the store with the parcel. The UPS Store personnel contacted agents and advised the parcel for mailbox 339 had just been picked up. Agents

observed SANCHEZ VARGAS place the box into the Kia sedan's trunk and then depart the location. Agents followed the vehicle to the Cambria Villa Apartments. The vehicle parked on the street in front of the apartment building. Agents observed SANCHEZ VARGAS carry the parcel up the stair case to apartment 407 and open the door with a key before entering.

56.     On June 17, 2020, agents contacted the personnel at the Public Storage located at 12320 East Whittier Boulevard, Whittier, CA 90602. Agents spoke with the manager, who advised the storage unit A077 was still open. The manager advised, according to records for unit A077, Chaves-Arias had brought "Jose Alsonso Sachez" with a telephone number of "909-507-9464" in on March 19, 2020, to add him to the unit, so he would have access to the unit.

### July 12, 2020 Search Warrant and Arrest of SANCHEZ VARGAS

57.     On July 9, 2020, the Honorable Kenly Kiya Kato, United States Magistrate Judge in the Central District of California, signed a search warrant for the apartment and storage unit used by Jose Sanchez Vargas. On July 12, 2020, HSI agents in California executed the warrants and arrested SANCHEZ VARGAS.

58.     SANCHEZ VARGAS was read his Miranda rights by HSI agents. SANCHEZ VARGAS stated he understood his rights and was willing to make a statement or answer questions without the presence of an attorney. SANCHEZ VARGAS admitted to his role in the conspiracy and that he assisted the DTO in receiving controlled substances from other countries and from Oregon, and then repackaging them to different customers throughout the United States, as directed by DTO leaders in Costa Rica.

59.     SANCHEZ VARGAS stated he uses email account chepe24rx@gmail.com to communicate with other members of the DTO. SANCHEZ VARGAS stated he receives an excel spreadsheet at chepe24rx@gmail.com which contains the lists of customers names, address and

the amount of pills they have ordered. SANCHEZ VARGAS stated he then ships the customer the pills and updates the spreadsheet with the tracking information and uses chepe24rx@gmail.com to send it to other members of the DTO.

**Search Warrant for chepe24rx@gmail.com**

60. On July 20, 2020, the Honorable Nancy Joseph, United States Magistrate Judge in the Eastern District of Wisconsin, signed a federal search warrant authorizing the search of Google account chepe24rx@gmail.com. On August 17, 2020, Google responded with the results of the search warrant, including several spreadsheets and 112 emails. Analysis of the spreadsheets revealed that between February 2019 and November 2019, the organization sold over 530,000 units of Tramadol, over 65,000 units of Tapentadol, over 57,000 units of Carisoprodol, and many more, without registering as a pharmacy. Based on their training and experience, and the investigation to date, case agents believe these spreadsheets are used to update/maintain inventory by members of the DTO, who are located in different countries. Agents also located several emails between chepe24rx@gmail.com and **sunsetpharmacysupply@gmail.com (TARGET ACCOUNT 1)** and between chepe24rx@gmail.com and **sunsetcr2018@gmail.com (TARGET ACCOUNT 2)**. In these emails, chepe24rx@gmail.com would send the aforementioned spreadsheets containing the monthly inventory and sales to both **sunsetpharmacysupply@gmail.com (TARGET ACCOUNT 1)** and **sunsetcr2018@gmail.com (TARGET ACCOUNT 2).** This emails were typically sent on the last day of the month or the first of the month from February 2019 through December 2019.

61. Based on their training and experience, and the investigation to date, case agents believe 247SupportOnline is operated by numerous co-conspirators. Case agents believe SANCHEZ VARGAS is one of those co-conspirators that handles the day-to-day operations of

25

247SupportOnline.com. Specifically, SANCHEZ VARGAS sets up PO Boxes, receives incoming international packages of controlled substances, and distributes them throughout the U.S., as directed by leaders of the organization. Case agents believe SANCHEZ VARGAS is a user of chepe24rx@gmail.com. Case agents believe that SANCHEZ VARGAS used chepe24rx@gmail.com to communicate with leaders of the organization using **sunsetpharmacysupply@gmail.com (TARGET ACCOUNT 1)** and **sunsetcr2018@gmail.com (TARGET ACCOUNT 2)** to further the illegal distribution of controlled substances via the online pharmacy. Case agents believe the information requested will assist in identifying source(s) of supply, stash locations, and other co-conspirators involved in the organization.

62.     Based on my training and experience, individuals who engage in interstate trafficking in controlled and non-controlled pharmaceuticals via the internet will communicate and send and receive information through electronic communication such as e-mails and chats. Individuals engaged in criminal activity via the internet often remain anonymous by providing inaccurate or false information, but will often use e-mail accounts to conduct business and/or communicate with other co-conspirators. The true identity and location of these individuals can often be found by analyzing their e- mail communication and IP connection logs.

63.     In general, an e-mail that is sent to a Google subscriber is stored in the subscriber's "mail box" on Google's servers until the subscriber deletes the e-mail. If the subscriber does not delete the message, the message can remain on Google's servers indefinitely. Even if the subscriber deletes the e-mail, it may continue to be available on Google's servers for a certain period of time.

## IV.     BACKGROUND CONCERNING E-MAIL

64.     In my training and experience, I have learned that Google provides a variety of on-line services, including electronic mail ("e-mail") access, to the public. Google allows subscribers

to obtain e-mail accounts at the domain name gmail.com. Subscribers obtain an account by registering with Google. During the registration process, Google asks subscribers to provide basic personal information. Therefore, the computers of Google are likely to contain stored electronic communications (including retrieved and un-retrieved e-mail for Google subscribers) and information concerning subscribers and their use of Google's services, such as account access information, e-mail transaction information, and account application information. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

65.     In addition to email, Google offers its users a number of other online services. A list of those services and their features is available at the following URL: https://support.google.com/.

66.     In my training and experience, e-mail providers generally ask their subscribers to provide certain personal identifying information when registering for an e-mail account. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative e-mail addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

67.     In my training and experience, e-mail providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account

(such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, e-mail providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the e-mail account.

68.     In my training and experience, in some cases, e-mail account users will communicate directly with an e-mail service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. E-mail providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

69.     This application seeks warrants to search all responsive records and information under the control of Google, a provider subject to the jurisdiction of this court, regardless of where Google has chosen to store such information. The government intends to require the disclosure pursuant to the requested warrant of the contents of wire or electronic communications and any records or other information pertaining to the customers or subscribers if such communication, record, or other information is within Google's possession, custody, or control, regardless of whether such communication, record, or other information is stored, held, or maintained outside the United States.

28

**V.     CONCLUSION**

70.     Based on my training and experience, and the facts as set forth in this affidavit, there is probable cause to believe that violations of violations of Title 21, United States Code, Sections 829(e), 841(a)(1), and 846 (Distribution of Controlled Substances), and Title 21, United States Code, Sections 841(h) and 843(c)(2)(A) (Offenses involving distribution of Controlled Substances by means of the Internet) have been committed by the users of the **TARGET ACCOUNTS**.  There is also probable cause to search the location described in Attachment A for fruits, evidence and instrumentalities of these crimes further described in Attachment B.

Case 2:20-mj-00377-SCD   Filed 09/04/20   Page 36 of 42   Document 1

## <u>ATTACHMENT A</u>

### Property to Be Searched

These warrants apply to information associated with the following Google drive accounts and email addresses that are stored at premises controlled by Google, a company that accepts service of legal process at 1600 Amphitheatre Parkway in Mountain View, California.

**Target Account 1: sunsetpharmacysupply@gmail.com**

**Target Account 2: sunsetcr2018@gmail.com**

2

## ATTACHMENT B

### Particular Things to be Seized

**I.      Information to be disclosed by Google (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, regardless of whether such information is stored, held or maintained inside or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A, for the time period of January 1, 2019 to the present:

a.      The contents of all e-mails associated with the accounts, including stored or preserved copies of e-mails sent to and from the accounts, draft e-mails, the source and destination addresses associated with each e-mail, the date and time at which each e-mail was sent, and the size and length of each e-mail;

b.      All records or other information regarding the identification of the accounts, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the accounts were created, the length of service, the IP address used to register the accounts, log-in IP addresses associated with session times and dates, account status, alternative e-mail addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c.      The types of service utilized;

d.      All records or other information stored at any time by an individual using the accounts, including address books, contact and buddy lists, calendar data, pictures, and files;

3

e.      All records pertaining to communications between the Provider and any person regarding the accounts, including contacts with support services and records of actions taken;

f.      All communications, in whatever form, and other information from Google Hangouts associated with the accounts;

g.      All information and documents from Google Drive associated with the accounts;

h.      All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Google; and

i.      For all information required to be disclosed pursuant to this warrant, the physical location or locations where the information is stored.

The Provider is hereby ordered to disclose the above information to the government within fourteen days of the issuance of this warrant.

## II.     Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 21, United States Code, Sections 829(e), 841(a)(1), 841(h), 846, and 843(c)(2)(A) and occurring after January 1, 2012, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

a.     The importation and distribution of controlled substances and other prescription medications.

b.     Information relating to the identity of any and all individuals who operate or maintain online pharmacies that sell controlled substances and other prescription medications.

c.     Records of payment made in relation to the operation and maintenance of online pharmacies that sell controlled substances and other prescription medications, including proceeds from such sales.

d.     Information relating to who created, used, or communicated with the account or identifier, including records about their identities and whereabouts.

5

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by _____ [Provider], and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of _____ [Provider]. The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

       a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of _____, and they were made by _____ [Provider] as a regular practice; and

       b.      such records were generated by _____ [Provider] electronic process or system that produces an accurate result, to wit:

            1.      the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of _____ [Provider] in a manner to ensure that they are true duplicates of the original records; and

2. the process or system is regularly verified by _____ [Provider], and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____     _____
Date                                       Signature